# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

**FELICIA LYONS DRAKE,** )
)
**Plaintiff,** )
)
v. ) **Case No.: 5:20-cv-0558-LCB**
)
**SOCIAL SECURITY** )
**ADMINISTRATION,** )
**COMMISSIONER,** )
)
**Defendant.**

## Memorandum Opinion

On April 23, 2020, the Plaintiff, Felicia Lyons Drake, filed a complaint seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer on October 5, 2020. (Doc. 9). Drake filed a brief in support of her position on November 11, 2020 (Doc. 11), and the Commissioner filed a response on December 21, 2020. (Doc. 12). Drake did not file a reply brief. The case is now fully briefed and ripe for review. Additionally, the Court held oral argument on August 24, 2021. For the following reasons, the Commissioner's final decision is **AFFIRMED**.

**I.     Background**

Drake protectively filed an application for supplemental security income ("SSI") on August 14, 2017, alleging disability beginning October 1, 2011. At her hearing before the Administrative Law Judge ("ALJ"), Drake amended her onset date to February 3, 2014. The ALJ determined that Drake last met the insured status requirements of the Social Security Act on December 31, 2016. Thus, the relevant inquiry was whether Drake was disabled between February 3, 2014, and December 31, 2016. Her claim was initially denied on November 1, 2017, and Drake requested a hearing before an ALJ. Drake, who was represented by counsel, appeared at the hearing on April 9, 2019. The ALJ heard testimony from Drake and from Barbra Azzam, a Vocational Expert ("VE"). After hearing the testimony and considering Drake's medical records, the ALJ issued an unfavorable decision on August 13, 2019. The Commissioner's decision became final when the Appeals Council denied Drake's request for review on March 24, 2020. This lawsuit followed.

## II.   The ALJ's analysis

After the hearing, the ALJ issued a written opinion explaining her decision. (Tr. 19-25)[1]. In issuing her decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not

---

[1] References to "Tr" denote the page numbers in the transcript prepared by the Commissioner appearing in the Court's CM/ECF system at (Doc. 9).

2

disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step of the five-step analysis requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Drake did not engage in substantial gainful activity between February 3, 2014, and December 31, 2016. (Tr. at 21). Accordingly, the ALJ moved on to the second step.

At step two, ALJs must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id.* If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. Here, the ALJ found that Drake had the following medically determinable impairments: hypothyroidism, low back pain, migraine headaches, seizures, C6 and C7 cervical nerve problems, obesity, and triple arthrodesis in the left foot. (Tr. At 21). The ALJ found, however, that Drake's impairments, or a combination thereof, did not significantly limit her ability to perform basic work-related

activities for 12 consecutive months. Therefore, the ALJ determined that Drake's impairments were not severe. Consequently, the ALJ concluded that Drake was not disabled as defined by the Social Security Administration and did not proceed to the next steps in this analysis.

### III. Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### IV. Drake's Arguments

Drake raises two main arguments in her brief. First, she argues that the ALJ failed to fully and fairly develop the medical evidence prior to determining that she

had no severe impairments. Second, Drake argues that the ALJ failed to properly evaluate her subjective statements regarding the severity of her symptoms. The Court will address each argument in turn.

### a. The ALJ adequately developed the medical evidence, and her decision was supported by substantial evidence.

Drake asserted that her disability resulted primarily from her back pain, pain in her ankle, and migraine headaches.[2] In her brief, Drake pointed to medical records from January of 2014, just before her alleged onset date, indicating that she was seen by Dr. Theodros Mengesha, a neurologist, for a number of impairments including migraines and lumbar radiculopathy that produced low back pain as well as numbness and weakness in her left leg. Drake noted that Dr. Mengesha, in discussing her medical history, stated that "she was sent for an MRI of the L spine and it showed L 4/5 bulging disc." (Tr. at 631). According to the records, Dr. Mengesha diagnosed Drake with lumbar radiculopathy and prescribed Neurontin and home exercises. (Tr. 635). After a follow-up visit in June 2014, Dr. Mengesha noted that, although Drake still had periods where she experienced sharp, shooting pain in her legs, she had been doing home exercises that helped with her condition. (Tr. at 623). Dr. Mengesha also noted that Drake complained

---

[2] As noted, the ALJ found that Drake also had hypothyroidism and seizures. However, Drake does not appear to argue in her brief that either of these conditions contributes to her alleged disability. However, even if she had, the records before this Court indicate that these conditions were well managed.

of headaches, but that over-the-counter medications helped to ease the pain. *Id.* Overall, Dr. Mengesha's notes indicated that, while Drake had persistent medical issues, they responded well to conservative treatment.

She also pointed to records from an orthopedist, Dr. Patrick Martens, who evaluated her in February of 2014 for pain and swelling in her ankles. She correctly asserted that Dr. Martens noted severe swelling in her left ankle and diagnosed her with a left valgus foot deformity. (Tr. 414-415). Drake's medical records indicate that she had surgery on her ankle performed by Dr. Beatriz Garcia Cardona on January 28, 2015. At her follow-up visit a week later, Dr. Cardona noted that Drake had no complaints that day. Dr. Cardona further noted that Drake had minimal swelling and prescribed a non-weightbearing cast. At her one-year follow up with Dr. Cardona, it was noted that Drake's orthotic inserts were causing some pain in her foot. However, Drake "noted immediate relief of her symptoms" after the orthotic was adjusted. Drake was encouraged to exercise as much as she could tolerate. *Id.* at 424. At her two-year follow up, Drake stated that she had "significant improvement" and that, although she was unable to afford physical therapy, she had been doing exercises on her own that were "very helpful." *Id.* at 425. Drake pointed to nothing in Dr. Cardona's records indicating that her ankle caused her to have work-related limitations for any significant period of time.

Next, Drake pointed to medical records from Dr. Jennifer Kessling, a cardiologist who saw her regarding stinging and cramping sensations in her legs. At the oral argument held in this case, Drake also pointed to these records as evidence that she was disabled. Dr. Kessling's records noted paresthesia in Drake's left leg as well as vein reflux. As Drake stated, Dr. Kessling recommended the use of compression stockings before considering more invasive treatment. (Doc. 11, p. 6). At a follow-up visit, Drake reported that, although some symptoms persisted, the compression stockings improved her symptoms. Nothing in Dr. Kessling's records indicates that Drake's venous insufficiency caused any severe symptoms that would impact her ability to work. In fact, Dr. Kessling noted that "[t]he patient is overall happy at this point with the control of her symptoms that she is experiencing of the venous insufficiency." (Tr. 454).

Drake also pointed to other medical issues that she discussed with various physicians including numbness in her feet, generalized anxiety, memory loss, drowsiness from her Neurontin, and depression. However, none of Drake's records indicate that these symptoms required anything more than conservative treatments such as home exercise, over-the-counter medications, and simply skipping her midday dose of Neurontin to avoid the associated drowsiness.

As noted, the ALJ found Drake's impairments to be non-severe, i.e., that Drake's impairments would not significantly limit her ability to perform basic

7

work activities and established only slight abnormalities. (Tr. 20), citing 20 CFR 404.1522. Drake takes issue with that determination and argues that "[t]he Commissioner's 'severity regulation' at step two of the five-step analysis must only be applied 'to screen out *de minimis* claims.'" (Doc. 11, p. 7), quoting *Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287, 2300 (1987) (O'Connor, J., concurring, joined by Stevens, J.) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking this vocational analysis" citing cases from the Fourth, Fifth, and Eleventh Circuits). Drake correctly points out that an ALJ should only end her analysis at step two of the evaluation when a claimant has impairments that are of so little significance that they do not have any impact on the performance of basis work activities. The Eleventh Circuit, Drake argues, has described the step-two test as the "slight abnormality" test. *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987). Under the test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* It "allows only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Thus, Drake's argument is that the ALJ erred by finding her impairments to be slight or trivial abnormalities. She asks this Court to find otherwise and remand the case back to the ALJ for further consideration. However, the question this Court must answer is not whether it would agree with Drake and find that her impairments were more than slight or trivial. Rather, the Court must determine whether substantial evidence supports the ALJ's determination. In reviewing all of the available records, the Court finds that the ALJ's decision is supported by substantial evidence. As noted above, Drake's impairments all responded well to conservative treatments. Though she reported some of her symptoms as being persistent, there was nothing in the record indicating that they prevented her from performing basic, work-related activities. Her exams routinely documented normal objective findings in range of motion, station/gait, muscle strength, and muscle tone. (Tr. 21-24, 315-18, 362, 368-69, 373-74, 387-88, 413-16, 417-24, 450, 595-601, 602-29). Drake consistently reported improved symptoms during follow-up visits with various providers including the doctor who performed surgery on her ankle. She pointed to no findings that would suggest otherwise. Rather, Drake asks this Court to focus on certain portions of the record where her doctors noted certain symptoms. Thus, she asks this Court to reweigh the evidence that was put before the ALJ and arrive at her preferred conclusion. This would be improper even if the Court would have arrived at a different conclusion than the ALJ.

However, because substantial evidence supports the ALJ's decision, this Court must affirm it.

Drake also makes two other arguments relating to this issue. First, she appears to assert that the ALJ erred by finding the opinions from two non-examining state agency medical consultants to be "persuasive." (Doc. 11, p. 8). Drake notes that these two doctors reviewed her records and found that there was insufficient evidence to make a finding as to whether she was disabled. Drake correctly argues that a finding of insufficiency is not the same as finding that her impairments were not severe. However, as noted by Drake, the ALJ did not base her decision solely on these evaluations. Rather, she merely found them to be persuasive. This was not error because, as noted above, the record contained substantial evidence, apart from these evaluations, to support the ALJ's findings.

Finally, Drake contends that the ALJ should have either requested further opinions from Drake's treating physicians or ordered consultative examinations to aid in her assessment of Drake's physical and mental impairments. However, an ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). A consultative examination need not be obtained to establish absolute certainty regarding a claimant's condition, as the Social Security Act requires only substantial evidence to support the ALJ's

findings. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). As discussed above, Drake's medical records show that her physical symptoms responded well to treatment and lacked any objective findings that they would prevent her from performing work-related activities for a period of twelve months or longer as required by the regulations. Drake has pointed to nothing beyond her bare assertion that would suggest that additional medical opinions would have changed the outcome of her case.

As to Drake's alleged mental impairments, the Court has thoroughly reviewed her medical records and finds nothing more than fleeting mentions of depression and anxiety. Drake does not argue that her records show otherwise and is simply arguing that the ALJ should have explored this area further. However, the ALJ was not required to do that. Even at this level, Drake has identified no medical records, in the record or otherwise, that would indicate that her psychiatric symptoms were so severe as to render her disabled.

Based on the foregoing, the Court finds that the ALJ adequately developed the record and that her decision was supported by substantial evidence. Drake doubtlessly had diagnosed medical conditions that she complained about to various providers during the relevant period. However, as discussed above, the record contains substantial evidence to support the ALJ's findings regarding the severity of Drake's impairments. Therefore, Drake is entitled to no relief on this issue.

### b. The ALJ properly evaluated Drake's subjective statements.

Next, Drake argues that the ALJ erred in discounting her subjective statements regarding the severity of her symptoms. In this portion of her brief, Drake again outlines her symptoms and points to records indicating that she complained of and was treated for various impairments. She also points to her testimony at the hearing before the ALJ in which she described her symptoms and their impact on her ability to work. However, Drake again appears to be inviting this Court to improperly reweigh the evidence that was presented to the ALJ.

An ALJ's evaluation of a claimant's subjective statements must follow a two-step analysis. First, the claimant must show "evidence of an underlying medical condition" and secondly, evidence of either "(1) objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged [symptoms]." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits a claimant's testimony, "he must articulate explicit and adequate reasons for doing so." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Subjective complaints alone can be used to establish disability, even when unsupported by specific objective evidence at the second step of the analysis regarding the severity of the conditions. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

In the present case, the ALJ conceded that Drake had medically determinable impairments that could reasonably be expected to produce her alleged symptoms. However, the ALJ found that Drake's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence or other evidence in the record. (Tr. 22-23). Drake argues that the ALJ's finding, i.e. that her impairments could be expected to produce her symptoms, was inconsistent with her conclusion that Drake did not have any work-related limitations. However, these findings are not irreconcilable. The ALJ found that Drake's symptoms were not as intense as she claimed and, therefore, did not produce the work-related limitations.

Nevertheless, Drake is simply asking this Court to reweigh the evidence. According to Drake, the ALJ erred by focusing on some of her normal examination findings and testing while choosing not to focus on other evidence. Thus, Drake asks this Court to do the opposite: give less weight to her normal findings and more weight to her abnormal ones. However, that would be improper. As thoroughly discussed above, this Court is only to determine whether there was substantial evidence to support the ALJ's finding regarding the alleged severity of Drake's symptoms.

As outlined above, the ALJ was required to determine whether there was evidence of an underlying medical condition and, if so, whether there was evidence

of either "(1) objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged [symptoms]." *Holt*, 921 F.2d at 1223.  Drake does not appear to argue that any of her conditions are so severe that they would be expected to give rise to her alleged symptoms.  Therefore, the Court must determine whether there was substantial evidence to support the ALJ's finding that there was a lack of objective medical evidence to confirm the severity of Drake's symptoms.  For the reasons stated in the previous section, the Court finds that the ALJ's determination was supported by substantial evidence.

Again, Drake no doubt suffers from determinable medical impairments that are well documented in her records.  However, she has always responded positively to conservative treatments and none of her records suggest that her symptoms prevent her from working.  Drake asks this Court to discount that evidence, however, and focus on the fact that she persistently complained about her various impairments.  But even if the Court did focus solely on Drake's complaints, that would not detract from the fact that the record is devoid of any substantial amount of objective medical evidence supporting the severity of her symptoms.  For example, Drake points to records from various providers demonstrating that an MRI showed an "L4-5 disc bulge" (Tr. 631); that she had

"tenderness of the fifth metatarsal" (Tr. 424); and that she suffered from "paresthesia of the medial aspect of the left leg." (Tr. 450). However, Drake fails to explain how these isolated portions of her medical records support a finding that her symptoms are so severe that they precluded her from working for a period of twelve or more months. These very findings were accompanied by statements from Drake's providers indicating that her symptoms improved with exercise and over-the-counter medication. Drake is simply asking this Court to discount those statements and arrive at its own conclusion regarding the severity of her symptoms. However, that would be improper as this Court's function is to determine whether the ALJ's findings were supported by substantial evidence. Because the Court so finds, Drake is not entitled to relief on this ground.

## V.   Conclusion

For the foregoing reasons, the decision of the Commissioner is hereby **AFFIRMED**. A final order will be entered separately.

**DONE** and **ORDERED** September 28, 2021.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE